USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/21/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

HENRY MOY,

                           Plaintiff,

          -against-

TARGET CORPORATION,

                           Defendant.

-----------------------------------------------------------------X

**21-CV-3888 (KHP)**

**OPINION ON MOTION FOR
SUMMARY JUDGMENT**

**KATHARINE H. PARKER, United States Magistrate Judge:**

       This action arises out of a slip and fall at a Target store on March 12, 2020 that resulted in injuries to Plaintiff Henry Moy ("Plaintiff").  On August 24, 2020, Plaintiff commenced a state court action against Defendant Target Corporation ("Defendant") for negligence, and on May 3, 2021, Defendant removed the action to federal court based on diversity jurisdiction.  (ECF No. 1.)  After the conclusion of discovery, Defendant moved for summary judgment.  (ECF No. 25.)  That motion is now before the Court.  For the reasons stated below, Defendant's motion for summary judgment is GRANTED.

**FACTS**

       The pertinent facts in this matter are undisputed.  On the evening of March 12, 2020, Plaintiff was shopping alone at a Target store in the Bronx, New York.  (Def. 56.1 ¶¶ 1, 4.)  Target Employees Analia Tapia and Sir Robles were on duty on that evening.  (*Id.* ¶¶ 53, 67.)  Ms. Tapia's job responsibilities included walking through the store to oversee team members. (*Id.* ¶ 54.)  Mr. Robles' job responsibilities included walking through the approximately 29 grocery aisles of the "Market Department" to ensure shelves were stocked, to assist guests, and to address any spills or hazards.   (*Id.* ¶¶ 68-70; Reply 4.)  Defendant also employed "All Jersey"

cleaners to patrol the store and to look for garbage or other conditions that needed to be cleaned.  (*Id.* ¶ 55.)

While Plaintiff was walking in the pantry section of the store, he slipped on a puddle of Alfredo pasta sauce and fell to the floor.  (*Id.* ¶ 18; Pl. 56.1 ¶ 109).  Both the pasta sauce and the floor were white.[1]  (Pl. 56.1 ¶¶ 120-21.)  At the time, the sauce was in liquid form and had not hardened or congealed.  (Def. 56.1 ¶ 44.)  Plaintiff did not notice the sauce before he fell. (*Id.* ¶ 19.)  After Plaintiff fell, he saw a broken glass pasta sauce jar in the same area where he had fallen, but no portion of the jar was within the puddle of sauce.  (*Id.* ¶¶ 24-25.)  Other than the spilled sauce and broken jar, the area where the accident occurred was clean and orderly. (*Id.* ¶¶ 10-11, 22, 28.)  Nobody else was in the aisle at the time of Plaintiff's fall, and there were no witnesses to the fall.  (*Id.* ¶¶ 26-27.)

Plaintiff does not know how or when the pasta sauce spilled to the floor; he did not hear the glass jar fall or break, and he is not aware of whether anyone else in the store heard or saw the jar break or otherwise observed the spill.  (*Id.* ¶¶ 29-39.)  Plaintiff also does not know where the closest Target employee was at the time of the accident and is not aware of whether any Target employee noticed the spill prior to the slip-and-fall.  (*Id.* ¶¶ 42-43.)

After Plaintiff fell, an individual – likely another Target customer – noticed Plaintiff on the floor and waved down Mr. Robles, who at the time was near the market stock room helping

---

[1] Defendant states that the sauce was Ragu Primavera, but Plaintiff states that the sauce was Alfredo.  (Def. 56.1 ¶ 18; Pl. 56.1 ¶ 109.) Both parties agree, however, that the sauce was white.  (*See* Reply 10; Pl. Br. 2.).  Alfredo sauce is traditionally made from butter, cream, and parmesan cheese, and is white.

a guest.  (*Id.* ¶ 77, Pl. Br. 2, Reply 3.)[2]  Mr. Robles was carrying cleaning products and a broom at the time.  (Pl. Br. 3.)  Mr. Robles could see the individual waving him down but could not see Plaintiff until he walked over to the aisle in which Plaintiff was sitting.  (Reply 3-4.)  The walk to Plaintiff took Mr. Robles about two minutes.  (*Id.* at 4.)  Mr. Robles went to Plaintiff and asked if he was okay, and then called for a "code green" on his walkie-talkie, indicating that an individual had been injured.  (Def. 56.1 ¶ 79.)  Mr. Robles testified at his deposition that at no time prior to being waved down and alerted to Plaintiff's accident did he hear the sound of a glass jar breaking.  (*Id.* ¶ 78.)

Ms. Tapia, the Target Team Leader on duty, arrived at the scene of the slip-and-fall after being alerted to the incident.  (*Id.* ¶ 65.)[3]  Ms. Tapia prepared a Guest Incident Report in connection with the incident.  (Def. 56.1 ¶ 66.)  Ms. Tapia testified at her deposition that before Plaintiff fell, she was not aware of any complaints about spilled sauce and was not sure when the sauce had spilled.  (*Id.* ¶¶ 63-64.)  At her deposition, she described the spill as "small" but did not remember the details of what the spill looked like.  (Pl. 56.1 ¶ 62.)

In addition, Ms. Kiomeny Estrella, a Target employee working in Security/Asset Protection, arrived at the scene of the fall.  (*Id.* ¶ 116-17.)  Ms. Estrella testified that the puddle of white sauce "blended" into the white floor.  (*Id.* ¶ 121.)  Either Ms. Estrella or a different

---

[2] Mr. Robles did not recall who waved him over to the area of the slip-and-fall, (Pl. Br. 2), but it appears likely from the record that the individual was a customer.

[3] Ms. Tapia testified that she was informed about the slip-and-fall by Target employee Mustapha Kamara.  (Pl. 56.1 ¶ 116.)  However, Mr. Kamara testified that he had no knowledge of the accident.  (*Id.* ¶ 111-14.)  It appears likely from the record that Ms. Tapia was in fact notified about the incident by Mr. Robles via the walkie-talkie announcement.  This disputed fact is not material.

Target employee photographed the incident.  (*Id.* ¶¶ 125-26.)[4]  In addition, a Target employee placed caution signs at the scene after Plaintiff's fall.  (Def. 56.1 ¶ 65.)  None of the Target employees who were deposed in connection with this action testified that they were aware of the spilled sauce prior to Plaintiff's fall.  In other words, there is no evidence that any employee heard the jar break or was aware of the spill prior to Plaintiff's fall.

## LEGAL STANDARD

"Summary judgment is warranted if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).  A fact is "material" if "it might affect the outcome of the suit under the governing law."  *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks and citation omitted).

"It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  However, "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).  Accordingly, summary judgment for the defendant is appropriate where the evidence in support of the plaintiff's case is "so slight" that a jury,

---

[4] Ms. Estrella did not recall whether she personally took the photographs, but at her deposition, she identified three photographs that were taken of the incident by a Target employee.  (*Id.* ¶ 127.)

4

considering the record as a whole, cannot reasonably find for the plaintiff. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citation omitted).[5]

In deciding the motion, the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *Jeffreys*, 426 F.3d at 553. However, a mere "scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat summary judgment; rather, "there must be evidence on which the jury could *reasonably* find" for the nonmoving party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "[M]ere speculation and conjecture" are not sufficient to preclude the granting of the motion. *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

## <u>ANALYSIS</u>

Plaintiff has brought a state claim for negligence against Defendant. Under New York law, to establish a prima facie case of negligence, a plaintiff has the burden to demonstrate "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Decker v. Middletown Walmart Supercenter*

---

[5] This standard differs from that applicable in New York state court. Under New York law, "a defendant who moves for summary judgment in a slip-and-fall case such as the instant action 'has the initial burden of demonstrating, as a prima facie matter, that it neither created the hazardous condition nor had actual or constructive notice of its existence for a sufficient length of time to discover and remedy it.'" *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 400 (E.D.N.Y. 2010) (citing *Totten v. Cumberland Farms, Inc.*, 871 N.Y.S.2d 179 (2d Dep't 2008)). Because the burden on a summary judgment motion is a procedural rather than substantive issue under the distinction created by *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) and its progeny, the federal standard applies here. *Tingling v. Great Atl. & Pac. Tea Co.*, 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003). As the court explained in *Doona*, the distinction between the federal and more "plaintiff-friendly" state standard is significant in cases where the plaintiff relies on "a slim set of baseline facts." 680 F. Supp. 2d at 401. In such cases, a defendant in federal court can meet its burden by showing the absence of evidence supporting the plaintiff's case, whereas a defendant in state court must show affirmative evidence that it lacked notice of the defect. *Id.*

*Store*, 2017 WL 568761, at *4 (S.D.N.Y. Feb. 10, 2017) (citing *Solomon by Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)).[6]   To make out a premises liability case, the plaintiff must show that there was a dangerous or defective condition that caused the accident, and that "the [defendant] either created the defective condition, or had actual or constructive notice thereof."  *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (citing *Baez v. Jovin III, LLC*, 839 N.Y.S.2d 201, 202 (N.Y. App. Div. 2007)).

Here, Defendant does not contest that a jury could find that the sauce constituted a dangerous condition, and Plaintiff does not argue that Defendant created the condition or had actual notice of it.  Rather, the precise issue here is whether Defendant had constructive notice of the defect.  To constitute constructive notice, a defect must be both (1) "visible and apparent," and (2) "it must exist for a sufficient length of time prior to the accident to permit [the] defendant's employees to discover and remedy it."  *Id*. (citing *Gordon v. Am. Museum of Nat.'l History*, 67 N.Y.2d 836, 837 (1986)).[7]  A plaintiff can establish constructive notice through circumstantial evidence, but he must "offer more

---

[6] Because jurisdiction over this matter is based upon the Parties' diversity of citizenship, and because the alleged acts occurred in New York, New York law governs the substantive claims.  *Castellanos v. Target Dep't Stores, Inc.*, 2013 WL 4017166, at *7 (S.D.N.Y. Aug. 7, 2013).  As discussed in footnote 5, a defendant arguing lack of notice in state court bears the burden of showing it lacked notice of the condition, but this procedural "burden-shifting standard" does not apply in federal diversity cases.  *Id.*

[7] Alternatively, a plaintiff "can establish constructive notice through evidence that the defendant was aware of an ongoing and recurring unsafe condition which regularly went unaddressed."  *Watts v. Wal-Mart Stores E., LP*, 2018 WL 1626169, at *4 (S.D.N.Y. Mar. 29, 2018) (citing *Mazerbo v. Murphy*, 860 N.Y.S.2d 289, 291 (App. Div. 2008)).  Plaintiff has not raised this argument, and accordingly the Court does not consider it.

than mere speculation that defendants should have been aware" of the condition.
*Shimunov v. Home Depot U.S.A, Inc.*, 2014 WL 1311561, at *5 (E.D.N.Y. Mar. 28, 2014).

Plaintiff argues Defendant had constructive notice of the puddle of sauce because the puddle was visible and apparent, and existed for a sufficient length of time prior to the accident for Defendant's employees to have remedied it. (Pl. Br. 11-12.) Defendant argues that there is no evidence on the record establishing *either* factor, and accordingly no rational jury could find in favor of Plaintiff. (Def. Br. 15-17.) The Court considers each factor in turn.

### 1. Visible and Apparent

Plaintiff has failed to identify any evidence that the puddle of pasta sauce on the floor was visible and apparent to Defendant, and the evidence in the record indicates that it was in fact not visible and apparent.

As an initial matter, it is undisputed that the pasta sauce was white and that the floor was white. One Target employee described the sauce as "blend[ing]" into the white floor. (Pl. 56.1 ¶¶ 120-21.) Moreover, it is clear that the condition was not visible or apparent to Plaintiff, as Plaintiff did not notice the puddle before he slipped in it. (Def. 56.1 ¶ 19.) While individuals including Plaintiff could see the sauce after Plaintiff slipped in it, the evidence does not support the notion that the puddle of sauce was apparent prior to Plaintiff's fall.

Courts in this Circuit routinely grant summary judgment in similar slip-and-fall cases on the ground that the condition was not visible and apparent when a plaintiff did not see

the condition prior to the fall and did not submit other evidence that the condition was visible. *See, e.g., Lyman v. PetSmart, Inc.*, 2018 WL 4538908, at *7 (S.D.N.Y. Sept. 21, 2018) (granting summary judgment where plaintiff testified that she did not see the condition until after she slipped and she offered no evidence that others saw the condition prior to the fall); *Watts*, 2018 WL 1626169, at *4 (granting summary judgment where the plaintiff's argument that the defect was visible and apparent rested on the facts that the substance was pink and in sufficient volume to wet the plaintiff's pants after she fell, and that two passersby saw the substance *after* the plaintiff pointed it out to them); *Decker*, 2017 WL 568761, at *7 (granting summary judgment where the plaintiff and her sister did not see the substance on the floor until after the plaintiff fell, the surveillance video did not show the condition on the ground, and the surveillance video showed people walking through the area without seeming to notice the condition).

At trial, Plaintiff would bear the burden to show that the defect was "visible and apparent" in order for a finding in his favor. *Gordon*, 67 N.Y.2d at 837. Because Plaintiff has failed to present any evidence suggesting that the defect was "visible and apparent" before he fell, a jury would not be able to make a finding of fact that Defendant had constructive notice of the condition. A ruling in Plaintiff's favor based on this record would be purely speculative. The lack of evidence suggesting the defect was visible or apparent is a sufficient ground for granting Defendant's motion for summary judgment.

2. **Length of Time**

Even if the defect was "visible and apparent" when Plaintiff fell, Plaintiff has failed

to present any evidence that the substance was on the floor for a long enough period such

that Defendant should have discovered it before his fall.  Although constructive notice can

be "inferred based on the circumstances surrounding the injury and the condition of the

premises," *Touri v. Zhagui*, 2010 WL 779335, at *3 (S.D.N.Y. Mar. 5, 2010), in order to

survive summary judgment, Plaintiff must "provide *some basis* for an inference that the

spill was there long enough to blame [Defendant] for the accident," *Watts*, 2018 WL

1626169, at *7 (emphasis added) (citation omitted).

Plaintiff testified that he did not know what caused the spill or when it occurred.

(Def. 56.1 ¶¶ 29-30.)  Similarly, no witnesses testified that they were aware of the spill or

knew when it occurred, and there is no video footage or other evidence demonstrating

when or how the spill occurred.  Plaintiff suggests that the most logical explanation for the

spill is that the jar of pasta sauce fell and broke, causing some sauce to spill out and form a

puddle on the floor.  This theory is supported by the presence of the broken jar that was

found close to the puddle.  However, this evidence does not speak to *when* the puddle of

sauce accumulated.

In lieu of direct evidence as to how long the sauce was on the floor, Plaintiff argues

that the circumstantial evidence could allow a jury to infer that the sauce was on the

ground for an appreciable period.  Specifically, Plaintiff argues that: (i) at the time of the

incident, Mr. Robles was in the Pantry section of the store and was close enough to the

accident to be able to see the individual waving him down after the accident; (ii) given Mr.

Robles' proximity to the incident, he would have heard the jar fall and break; (iii) since Mr.

Robles did not hear the jar break, the jar "must have broken some time before." (Pl.

Br. 11.) Thus, Plaintiff argues, the broken jar "must have been present for some time as

neither Mr. Robles [n]or the plaintiff observed anyone else in the aisle or the area." (*Id.*)

This argument holds no water. First, the inference that Plaintiff seeks to draw

requires the assumptions that Mr. Robles was in fact within earshot of the falling jar during

the time preceding the slip-and-fall. In fact, Mr. Robles testified that before and during the

slip-and-fall, he was assisting a customer near the market stock room, which was about a

two-minute walk from the aisle where Plaintiff fell. It is entirely unclear from the record

that Mr. Robles would have in fact been able to hear a jar fall from this location within the

supermarket. Second, even if Mr. Robles was within earshot of the falling jar in the

moments immediately preceding the slip-and-fall, there is no evidence on the record to

suggest he was in this location for any appreciable amount of time. The record contains no

evidence regarding how long Mr. Robles was near the market stock room or where he was

before that. The Market Department in which Mr. Robles worked consists of at least 29

aisles. (Reply 5). Thus, it is highly possible that Mr. Robles was out of earshot of the falling

jar just a few minutes prior to the slip-and-fall, and that the jar fell within this time.

Accordingly, it is entirely speculative to infer that because Mr. Robles did not hear

the jar break, the sauce thus was on the floor for any appreciable length of time. *See, e.g.,*

*Watts*, 2018 WL 1626169, at *8 (rejecting as speculative plaintiff's argument that because

the liquid on the floor was sticky, this created an issue of material fact regarding how long the substance had been on the floor); *Lacey v. Target Corp.*, 2015 WL 2254968, at *4 (E.D.N.Y. May 13, 2015) (rejecting as speculative plaintiff's argument that the fruit on the floor must have existed for a sufficient length of time because it was near the produce section and it appeared to be oxidized); *cf. Negri v. Stop & Shop, Inc.*, 480 N.E.2d 740, 741 (N.Y. 1985) (evidence that there were "a lot of broken jars" on the floor, a witness in the immediate vicinity did not hear any jars falling or breaking for 15 to 20 minutes before plaintiff's fall, and the aisle had not been inspected for at least 50 minutes before the fall, amounted to sufficient evidence to raise a material dispute as to constructive notice).

Plaintiff also argues that because Mr. Robles had a broom and spill powder on his person when he was waved over to Plaintiff, this creates the inference that he was aware of a spill that needed to be cleaned prior to Plaintiff's fall. (Pl. Br. 12.) This argument is also entirely speculative. Mr. Robles' job required him to walk through the aisles to address messes and spills. Accordingly, it is logical that he would keep cleaning products on his person. It is not reasonable to infer that he knew about the spill simply because he carried a broom with him. More importantly, Mr. Robles testified under oath at his deposition that he was not aware of the spill prior to Plaintiff's fall. (Def. Br. 9.)[8] While the Court does not need to credit Mr. Robles' testimony, Plaintiff has provided no evidence to

---

[8] Plaintiff also points out that Ms. Tapia's deposition testimony conflicts with Mr. Kamara's, as Ms. Tapia testified that Mr. Kamara informed her of the incident, and Mr. Kamara testified that he was not aware of the incident at the time. Plaintiff does not state how this conflicting testimony is relevant to the issue of constructive notice. Indeed, the most logical explanation regarding the conflicting testimony is that Ms. Tapia misremembered which Target employee alerted her to the incident.

contradict it.  *See, e.g., Vasquez v. United States*, 2016 WL 315879, at *8 (S.D.N.Y. Jan. 15, 2016) (granting summary judgment where employees testified that they never noticed the hazard while using, cleaning, or inspecting the area and plaintiff pointed to no evidence contradicting this testimony).

Plaintiff's argument is further undermined by the fact that the direct evidence suggests that the spill occurred only shortly before the slip-and-fall.  That is, the sauce appeared to be wet and did not seem congealed or hardened; there were no footprints or track marks through the substance; and the aisle otherwise appeared orderly.  Indeed, this case involved none of the classic "telltale signs supporting an inference of a long-standing condition," such as track marks or footprints indicating that other individuals had passed through the area when the condition was already present.  *Figueroa v. Pathmark Stores, Inc.*, 2004 WL 74261, at *3 (S.D.N.Y. Jan. 15, 2004); *see also Watts*, 2018 WL 1626169, at *8 (the fact that the spilled substance appeared to be wet and had not dried undermined any inference that the liquid was there for an appreciable period of time).  Plaintiff's argument is also undermined by testimony that Ms. Tapia's and Mr. Robles' job duties included walking through the store and looking for hazards, and that a cleaning service was employed to do the same.  (Def. Br. 15.)  Because Target employees and cleaners were regularly moving through the aisles, this counsels against the inference that the sauce was on the floor for an extended period.

Plaintiff's argument that constructive notice can be inferred here falls to pieces upon inspection.  Plaintiff has not pointed to any evidence – not even circumstantial

evidence – that could permit a reasonable jury to infer that the sauce was on the floor for a long enough period of time such that Defendants had constructive notice.  A ruling in Plaintiff's favor based on this record "would constitute speculation, rather than a finding of fact."  *Lacey*, 2015 WL 2254968, at *5; *see also Lyman*, 2018 WL 4538908, at *7 (explaining that where plaintiff did "not put forth any evidence beyond mere speculation to indicate how long the puddle existed before she fell," a verdict in plaintiff's favor would not constitute a finding of fact).

Plaintiff's inability to point to evidence that would allow a jury to conclude that the sauce was on the ground for an appreciable length of time provides an alternate ground for granting Defendant's motion for summary judgment.

## **CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment is granted.  This resolves the motion at ECF No. 25.  The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 25 and to close the case.

**SO ORDERED.**

DATED:      New York, New York
                   September 21, 2022

                                                        *Katharine H. Parker*
                                                        KATHARINE H. PARKER
                                                        United States Magistrate Judge